UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS H. RANDOLPH, JR.,

        Petitioner,

                                  CIVIL NO. 04-CV-73475-DT
v.                                HONORABLE NANCY G. EDMUNDS

HUGH WOLFENBARGER,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

        Thomas Randolph ("Petitioner"), a state prisoner confined at the Macomb Correctional

Facility in New Haven, Michigan, has filed a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254 alleging that he is being held in violation of his constitutional rights.  Petitioner

was convicted of first-degree premeditated murder following a jury trial in the Oakland County

Circuit Court in 2001.  He was sentenced to life imprisonment without the possibility of parole.

In his pleadings, Petitioner raises claims concerning the admission of opinion testimony,

prosecutorial misconduct, the sufficiency of the evidence, the failure to disclose impeachment

evidence, the effectiveness of trial counsel, and newly-discovered evidence.  For the reasons

stated below, the petition for writ of habeas corpus is denied.

**I.**        **Basic Facts and Procedural History**

        Petitioner's conviction arises from the shooting death of his wife, Sharon Randolph, in a

shopping plaza parking lot on January 8, 1982 in Southfield, Michigan.  Petitioner was tried with

the alleged shooter, co-defendant Sanirell Shannon, in a joint trial with separate juries.[1]  The

Michigan Court of Appeals set forth the basic facts, which are presumed correct on habeas

review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx.

730 (6th Cir. 2002), as follows:

> On January 8, 1982, Sharon Randolph was shot and killed in the parking lot
> outside of the Empress Garden Restaurant in Southfield, Michigan.  Defendant
> contended, in his statements to the police, that a man followed him and his wife,
> Sharon Randolph, from the Empress Garden Restaurant to their car grabbed him
> by the collar from behind, placed an object to his neck, and stated if there were no
> problems nobody would be hurt.  Then, according to defendant, the man told him
> to open the door, the man entered the left rear of the vehicle and pulled Sharon
> Randolph into the backseat of the vehicle.  Defendant's statement to the police
> was that he was then hit on the head twice and lost consciousness, but heard what
> sounded like "firecrackers" in the background.  When the police arrived on the
> scene, Sharon Randolph was in the rear driver's seat of the vehicle with her head
> laying on her left shoulder and bleeding from the head.  Sharon Randolph died of
> multiple gun shot wounds.
>
> In 1999, David Hutsell and Sarah Norwood came forward, to the police, alleging
> that defendant paid their uncle, Shannon, to murder Sharon Randolph, and that
> Shannon did murder Sharon Randolph.  Hutsell testified that he witnessed the
> murder.

*People v. Randolph*, No. 239151, 2003 WL 22113938, *1 (Mich. App. Sept. 11, 2003)

(unpublished).

Following his conviction and sentence, Petitioner filed an appeal as of right and a motion

to remand with the Michigan Court of Appeals essentially raising the same issues presented on

habeas review.  The Michigan Court of Appeals denied the motion to remand and affirmed

Petitioner's conviction in a *per curiam* decision.  *Id.*  Petitioner then filed an application for

leave to appeal with the Michigan Supreme Court, which was denied.  *People v. Randolph*, 469

---

[1]Sanirell Shannon was acquitted by his jury.

2

Mich. 1013, 676 N.W.2d 630 (2004).

Petitioner, through counsel, thereafter filed the present habeas petition, asserting the following claims as grounds for relief:

I.    He was deprived of his due process right to a fundamentally fair trial when, over his objection, the trial court permitted a completely unqualified lay witness/evidence technician to offer expert scientific opinions as to the characteristics and qualities of blood spatter and an opinion reconstructing the crime scene as to the central factual issue of the case – whether the shooting occurred inside or outside the vehicle of the deceased.

II.   He was deprived of his due process right to a fundamentally fair trial by repeated and persistent prosecutorial misconduct: where, without notice to the defense, the prosecutor knowingly elicited scientific blood spatter evidence from a non-expert; and where the prosecutor exploited the introduction of prejudicial evidence – by counsel for the co-defendant – that the defendant had conspired to kill a subsequent wife.

III.  The evidence presented at trial was insufficient to support his conviction for first-degree premeditated murder.

IV.   Law enforcement's suppression of evidence of impeachment regarding inducements to a material witness deprived him of his right to the full and effective confrontation of the witness and of his due process right to a fair trial.

V.    He was deprived of his rights under the United States and Michigan Constitutions to the effective assistance of counsel where trial counsel failed to interview key defense witnesses, failed to investigate and present a substantial defense, failed to consult adequately with him, failed to prepare for and present his testimony, failed to make proper objections to prejudicial and inadmissible evidence, and failed to ask for curative instructions.

VI.   He is entitled to a remand for an evidentiary hearing and a new trial based upon newly-discovered information of material inducements promised to witnesses and other significant impeaching and exculpatory evidence.

Respondent has filed an answer to the petition asserting that it should be denied because the claims are unexhausted, procedurally defaulted, not cognizable upon habeas review, and/or lack

3

merit.  Petitioner has filed reply to that answer.

## II.    Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his

habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336

(1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court
> proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of

facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S.

12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see

also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of §

2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the

correct governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting

4

*Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**III.    Analysis**

A.    Exhaustion of State Remedies

As an initial matter, Respondent asserts that the petition should be dismissed because

Petitioner has failed to properly exhaust state court remedies as to his habeas claims.[2] Specifically, Respondent asserts that Petitioner did not present habeas claims I, II, and VI to the state courts as federal constitutional issues. Petitioner contends that he sufficiently federalized his habeas claims in the state courts.

A prisoner filing a petition for writ of habeas corpus under 28 U.S.C. §2254 must first exhaust all state remedies. *See* 28 U.S.C. § 2254(b), ©; *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Exhaustion requires that a prisoner "fairly present" the substance of each federal constitutional claim to the state courts using citations to the United States Constitution, federal decisions using constitutional analysis, state decisions employing constitutional analysis in similar fact patterns, or alleging facts well within the mainstream of constitutional law. *See McMeans v. Brigano*, 228 F.3d 674, 681-82 (6th Cir. 2000); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993)). The mere assertion of phrases like "fair trial" or "due process" is insufficient to satisfy the exhaustion requirement; a state prisoner must present his claims as federal constitutional claims. *McMeans*, 228 F.3d at 681-82. Additionally, the "'factual and theoretical substance of a claim must be presented to state courts to render it exhausted for federal habeas corpus purposes.'" *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (citations omitted). The burden is on the petitioner to prove exhaustion. *Rust*, 17 F.3d at 160.

While the exhaustion requirement is strictly enforced, it is not a jurisdictional prerequisite for bringing a habeas petition. *Granberry v. Greer*, 481 U.S. 129, 134-35 (1987).

---

[2]Respondent initially raised the exhaustion issue in a motion to dismiss, which the Court denied without prejudice pending an answer addressing the petition's merits.

6

2:04-cv-73475-NGE-WC   Doc # 57   Filed 06/12/06   Pg 7 of 29   Pg ID 4085

Because the Court concludes that Petitioner's habeas claims lack merit, the interests of comity and federalism are better served by addressing Petitioner's claims rather than dismissing the petition based upon the alleged failure to exhaust state remedies. *See Lyons v. Stovall*, 188 F.3d 327, 333 (6th Cir.1999); *see also* 28 U.S.C. § 2254(b)(2) (authorizing courts to deny a habeas petition on its merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). The Court, therefore, will proceed on the merits of Petitioner's claims.

B.    Admission of Opinion Testimony

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in admitting opinion testimony from Officer Roger Fleming, a police evidence technician. Respondent contends that this claim is barred by the doctrine of invited error, is not cognizable upon federal habeas review, and lacks merit.

The Michigan Court of Appeals set forth the relevant facts for this issue as follows:

The defense version of the events surrounding Sharon Randolph's shooting was that she was shot inside of the vehicle, which was inconsistent with the testimony of Hutsell who testified that the shooting occurred outside of the vehicle. The prosecution's version was that the shooting occurred outside of the car, which would coincide with Hutsell's testimony. During the cross-examination of Officer Roger Fleming, the evidence technician at the scene,[2] defendant's counsel asked various question regarding whether there was evidence of bullet holes in the vehicle or any blood found on the ground outside of the car. Defendant's counsel then went on to ask Officer Fleming whether the evidence was consistent with Sharon Randolph being shot outside of the vehicle and Officer Fleming answered in the following colloquial:

_____

[2]Officer Fleming, as an evidence technician, was to collect and preserve evidence at the scene of the crime. Officer Fleming has a criminal justice degree from Michigan State University and a master's degree. While in college and in training to be a specialist, Officer Fleming did theoretical blood spatter work. Officer Fleming taught criminal investigation at the University of Detroit from 1983 until 1998, which included instructing on collecting evidence at a crime scene. From 1986 to 1989, Officer Fleming was the Chief of Police for Mason.

*Q.* You didn't find any evidence consistent with the shooting having occurred out in the parking lot?

*A.* I wouldn't say that.

Defense counsel did not receive the answer he wanted from Officer Fleming, and now defendant claims error. Clearly, defendant was hoping that Officer Fleming would testify the evidence was not consistent with Sharon Randolph being shot outside the vehicle. However, defense counsel did not receive the answer sought after and moved on.

On redirect Officer Fleming testified that in his opinion the door was open when the blood got on the outside of the car because the seal of the door would prevent the blood from traveling to the rocker panel and because the blood would be thicker in the cold weather, which would also impede the travel of the blood. The prosecution, during its redirect examination of Officer Fleming, then went back to the question asked by defense counsel in the following colloquial:

*Q.* Also, you were also asked by Ms. Frankel, I believe the question was: You didn't find any evidence consistent with anything happening, the incident outside of the car. I think your response was, I wouldn't say that. Do you recall that?

*A.* Yes.

Then, Officer Fleming went on to testify that "I certainly could not exclude the possibility that this violence occurred outside of the car for a number of reasons." In addition, Officer Fleming indicated that the "configuration ... of that blood spatter evidence on that car door .... suggests to me that could only have happened outside of the car with that car door open." Further, Officer Fleming testified to how the blood was dripping. The trial court noted that it was not going to strike the testimony with regard to blood and location because it was in response to what was brought up on cross-examination.

*Randolph*, 2003 WL 22113938 at *2 (fn. 2 in original).

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.

2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).  The admission of expert

testimony in a state trial presents a question of state law which does not warrant federal habeas

relief unless the evidence violates due process or some other federal constitutional right.  *See*

*Keller v. Larkins*, 251 F.3d 408, 419 (3rd Cir. 2001).  Similarly, a determination as to whether an

individual is qualified to give expert testimony involves only a state law evidentiary issue.  *See*

*United States ex. rel. Ruddock v. Briley,* 216 F. Supp. 2d 737, 743 (N.D. Ill. 2002); *see also*

*Vaquez-Torrez v. Dorsey*, 66 F.3d 339, 1995 WL 539575, \*1 (10th Cir. 1995).  Thus, even if

Officer Fleming's blood spatter testimony was incorrectly admitted, this is the type of state law

error in an evidentiary ruling which is not cognizable on habeas review.

     Moreover, even if this claim is cognizable, Petitioner is not entitled to habeas relief for

two reasons.  First, the claim is barred by the doctrine of invited error.  When a criminal

defendant invites an error in the trial court, he is precluded from seeking habeas corpus relief

for that error.  *See, e.g., Fields v. Bagley*, 275 F.3d 478, 485-86 (6th Cir. 2001).  The Michigan

Court of Appeals denied relief on this issue because defense counsel "specifically interjected

and raised the issue of Officer Fleming's opinion of whether the shooting took place inside or

outside the vehicle during the cross-examination of Officer Fleming" and because defense

counsel elicited non-expert opinion testimony from Southfield Police Detective Mario Eovaldi

about how the blood got on the rocker panel under the back door of the car.  *See Randoloph*,

2003 WL 22113938 at \*2-3.  This decision is neither contrary to Supreme Court precedent nor

an unreasonable application of the law or the facts.  As discussed by the Michigan Court of

Appeals, the record indeed indicates that defense counsel  "opened the door" to Officer

Fleming's blood spatter and opinion testimony by asking him whether he found evidence

consistent with the shooting having occurred outside the car.  Further, Officer Fleming's testimony was responsive to Detective Eovaldi's testimony.  This claim is thus barred by the doctrine of invited error.

Second, Petitioner has not shown that the admission of the disputed testimony from Officer Fleming rendered his trial fundamentally unfair.  As noted, defense counsel opened the door to such testimony.  Additionally, defense counsel cross-examined Officer Fleming extensively and solicited testimony from other witnesses to counter Officer Fleming's testimony.  Lastly, other evidence, including David Hutsell's testimony and police testimony indicating that blood was on the outside rocker panel of the car and that some of the victim's personal belongings were found outside of the car, also supported a finding that the shooting occurred outside the vehicle.  *Id*. at *3 n. 4.  The admission of Officer Fleming's testimony thus did not deprive Petitioner of a fair trial.  Habeas relief is not warranted on this claim.

      C.      <u>Prosecutorial Misconduct</u>

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by soliciting Officer Fleming's blood spatter opinion testimony, by arguing facts not in evidence for claiming that Shannon shot the victim and put her in the car, and by exploiting evidence introduced by co-defendant's counsel that Petitioner had conspired to kill a subsequent wife.  Respondent contends that these claims are barred by procedural default and/or lack merit.

      1.      <u>Solicitation of Officer Fleming's Testimony</u>

Petitioner first asserts that the prosecutor engaged in misconduct by soliciting Officer Fleming's blood spatter opinion testimony.  The United States Supreme Court has stated that

10

prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

The Michigan Court of Appeals rejected this claim, finding that Petitioner could not establish that the prosecutor engaged in misconduct in soliciting the blood spatter and opinion testimony from Officer Fleming because defense counsel opened the door to the testimony. *See*

11

*Randolph*, 2003 WL 22113938 at *4. This decision is neither contrary to Supreme Court

precedent nor an unreasonable application thereof. As discussed *supra*, the record reveals that

the prosecutor's questions were made in response to defense counsel's inquiry and were not

improper. Additionally, Petitioner was not denied a fair trial by the admission of Officer

Fleming's opinion testimony. Petitioner thus cannot establish that he is entitled to habeas relief

on this prosecutorial misconduct claim.

### 2.   Arguing Facts Not in Evidence

Petitioner also asserts that the prosecutor engaged in misconduct by arguing facts not in

evidence in claiming that Shannon shot the victim and put her in the car. Respondent contends

that this claim is barred by procedural default.

Habeas relief may be precluded on claims that a petitioner has not presented to the state

courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72

(1977); *Couch v. Jabe*, 951 F.2d 94 (6th Cir. 1991). In *Wainwright*, the United States Supreme

Court explained that a petitioner's procedural default in the state courts will preclude federal

habeas review if the last state court rendering a judgment in the case rested its judgment on the

procedural default. 433 U.S. at 85. In such a case, a federal court must determine not only

whether a petitioner has failed to comply with state procedures, but also whether the state court

relied on the procedural default or, alternatively, chose to waive the procedural bar. "A

procedural default does not bar consideration of a federal claim on either direct or habeas

review unless the last state court rendering a judgment in the case 'clearly and expressly' states

that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).

The last *explained* state court judgment should be used to make this determination. *Ylst v.*

*Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained

denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id.*

   Here, the Michigan Court of Appeals rendered the last reasoned opinion.  In dismissing

this claim, the court relied upon a state procedural bar -- Petitioner's failure to object at trial.

*See Randolph*, 2003 WL 22113938 at *4-5.  The failure to make a contemporaneous objection

is a recognized and firmly-established independent and adequate state law ground for refusing

to review trial errors.  *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999);

*People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v.*

*Thompson*, 501 U.S. 722, 750-51 (1991).  Moreover, a state court does not waive a procedural

default by looking beyond the default to determine if there are circumstances warranting review

on the merits.  *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).  Plain error review does

not constitute a waiver of state procedural default rules.  *See Hinkle v. Randle*, 271 F.3d 239,

244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Nor does a state

court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative.

*See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).  In this case, the Michigan Court

of Appeals denied this claim based upon Petitioner's failure to object at trial.

   A state prisoner who fails to comply with a state's procedural rules waives the right to

federal habeas review absent a showing of cause for noncompliance and actual prejudice

resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of

justice.  *See Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).  In

this case, Petitioner alleges the ineffective assistance of counsel as cause to excuse his default.

Even assuming that Petitioner could establish cause, however, he cannot establish prejudice as

this claim lacks merit.

It is well-settled that it is misconduct for a prosecutor to misstate the evidence or to assume the existence of prejudicial facts not in evidence. *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986); *United States v. Everett*, 270 F.3d 986, 993 (6th Cir. 2001). However, a prosecutor has leeway to argue reasonable inferences from the evidence presented at trial. *See, e.g., Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). In this case, as noted by the Michigan Court of Appeals in reviewing this claim for plain error, there was testimony to support that Shannon shot Sharon Randolph outside of the vehicle and that she was found inside the vehicle when help arrived. *See Randolph*, 2003 WL 22113938 at *4. The prosecutor's argument that Shannon put Sharon Randolph in the car after shooting her was based upon a reasonable inference from that evidence. Petitioner has thus failed to establish that the prosecutor erred or engaged in misconduct under the standards set forth in *Donnelly* and *Macias*, *supra*.

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. This claim is thus barred by procedural default, otherwise lacks merit, and does not warrant habeas relief.

14

3.      Conspiracy to Kill Subsequent Wife

Lastly, Petitioner asserts that the prosecutor engaged in misconduct by exploiting evidence introduced by co-defendant Shannon's counsel that Petitioner had conspired to kill a subsequent wife.  During trial, co-defendant's counsel cross-examined Sarah Norwood about a statement she made concerning discussions between Shannon and Petitioner about killing Marie Randolph, Petitioner's second wife.  Respondent contends that this claim is barred by procedural default and lacks merit.

This Court agrees with Respondent.  The Michigan Court of Appeals rejected this claim based upon Petitioner's failure to object at trial and his failure to properly brief the issue on appeal.  *See Randolph*, 2003 WL 22113938 at *5.  This constitutes a state procedural default. Petitioner must therefore establish cause and prejudice to excuse the default, or show that a fundamental miscarriage of justice has occurred.

Even assuming that Petitioner could establish cause to excuse his default, he cannot establish prejudice as this claim lacks merit.  Petitioner has presented no case law which indicates that the prosecution bears responsibility for a line of inquiry undertaken by co-defendant's counsel in questioning a witness.  Further, Petitioner acknowledges that the prosecutor did not pursue this matter during questioning or closing arguments.  Petitioner has also not shown that the prosecutor was aware of, or could control, what Sarah Norwood would say in response to the questions asked by co-defendant's counsel.  Petitioner has thus not established that the prosecutor erred, or that he was denied a fundamentally fair trial in this regard.  Lastly, as discussed *supra*, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred.  This claim is thus barred by procedural default, lacks merit,

and does not warrant habeas relief.

    D.    <u>Insufficient Evidence</u>

Petitioner next asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his murder conviction. Respondent contends that this claim lacks merit.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Further, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *See* Mich. Comp. L. § 750.316; *People v. Bowman*, 254 Mich. App. 142, 151, 656 N.W.2d 835 (2002); *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992). To premeditate means that the defendant thought about the action beforehand. *People v. Plummer*, 229 Mich. App. 293, 300, 581 N.W.2d 753 (1998). Premeditation and deliberation require sufficient time to allow the defendant to take a second look. *Schollaert*, 194 Mich. App. at 170.

16

Premeditation and deliberation may be established by evidence of "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Id.* Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime. *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993). A defendant's intent or state of mind, like all the elements of a crime, may be shown by circumstantial evidence. *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997).

One who procures, counsels, aids or abets in the commission of an offense may be convicted and punished as if he directly committed the offense. Mich. Comp. L. § 767.39, *People v. Mass*, 464 Mich. 615, 628, 628 N.W.2d 540 (2001). To convict a defendant under an aiding and abetting theory, the prosecution must establish that the crime was committed by the defendant or some other person, that the defendant performed acts or gave encouragement that aided or assisted in the commission of the crime, and that the defendant either intended to commit the crime or knew that the principal intended to commit the crime at the time he gave the aid or encouragement. *People v. Carines*, 460 Mich. 750, 757-58, 597 N.W.2d 130 (1999).

Applying the *Jackson* standard, the Michigan Court of Appeals concluded that sufficient evidence was presented to support Petitioner's first-degree murder conviction, stating in relevant part:

> Hutsell and Norwood lived with Shannon in 1982. Shannon and Hutsell knew defendant from Wayne County Community College. Hutsell stated that he heard conversations between defendant and Shannon around a year prior to January 1982, at which time defendant was conveying to Shannon that he was sick of his wife and wanted Shannon to kill her for him. Hutsell also stated that he heard this several times, but thought defendant was joking. Hutsell further stated that, a week before the murder of Sharon Randolph, defendant was at the house where both Hutsell and Shannon lived, and that defendant indicated that he wanted his

17

wife dead for real, and Shannon indicated he would not do it without money. According to Hutsell, an insurance policy was discussed as a way to pay Shannon, and that defendant gave Shannon money in a brown paper bag to start. Norwood also claims she saw Shannon receive money prior to the killing of Sharon Randolph, and heard defendant inform Shannon that he had to wait for the rest of the money. Netherlee Harkins, Shannon's sister and the mother Hutsell and Norwood, testified that sometime prior to the killing of Sharon Randolph, Shannon informed her that defendant wanted Shannon to kill his wife because his wife, Sharon Randolph, was abusing him. Harkins also testified that Shannon told her that he was going to kill Sharon Randolph to get the insurance money.

Hutsell testified that he drove Shannon to the plaza, where the Empress Garden Restaurant was located, to meet defendant on January 8, 1982. Hutsell further testified that Shannon went into a plaza then came out with defendant, briefly, and then defendant returned to the restaurant. According to Hutsell, Shannon then waited for defendant and Sharon Randolph to come to the car, and when they arrived, Shannon ran over to Sharon Randolph outside of the car and said "die bitch die," and shot her in the face twice. Hutsell stated that he did not see her after the first shot, making him assume she dropped towards the ground. Hutsell indicated that defendant was standing on the other side of the vehicle at the time, and said "how do you want to do this, lets make it look real good," gave Shannon his wallet, and that after this Shannon hit defendant a couple of times with the butt of the gun. Hutsell testified that Shannon ran back to the car with blood spatters on his face instructing Hutsell to drive away. Hutsell indicated that upon returning home, Shannon placed his clothes in a garbage bag, cleaned the gun, and dumped the clothes and then eventually the gun was dumped in the river. Norwood testified that when Shannon returned to the house that night he had blood on his face and upper chest area, and she also saw Shannon get a garbage bag, and heard him yelling for the gun cleaner. Norwood also testified that this same night she saw Shannon with money on the table.

Norwood testified that after Sharon Randolph was killed, Shannon was calling defendant frequently on the phone asking for money, and that defendant said he was waiting for insurance company to pay, and not to call him anymore. Hutsell testified that defendant came over approximately two weeks after the shooting with a briefcase, handed it to Shannon, said here is all of your money, and indicated that he could not come over to the house anymore. Hutsell further testified that Shannon put the money, around $40,000, in a paper bag. Norwood explained that she recalls defendant giving Shannon a briefcase full of money approximately a week after she saw the blood on his face, and that Shannon transferred this money to a paper bag. Hutsell, Norwood, and Harkins all testified that they recall defendant spending a lot of money around this time period.

18

Ann Morgan testified that Shannon was staying in her garage during the summer of 1999, and that defendant pulled in the driveway and gave Shannon a ticket, which she assumed to be a ticket to Mississippi.  Morgan further testified that defendant and Shannon drove off together.  Morgan also testified that she saw defendant on several prior occasions.

Hutsell explained that he did not go to the police prior to December 1999 because Shannon had threatened him, his grandparents, mother, and fiancé. Hutsell further explained that his grandparents were dead and that he had not heard from his uncle for almost a year at the time he gave a statement to the police.  Norwood explained that she did not report to the police earlier because her grandmother had made them to promise not to, and she was concerned for her family's safety.  Norwood stated that she finally decided to give her statement in 1999 after she was diagnosed with terminal cancer in October 1999. The parties stipulated to the fact that defendant and Sharon Randolph had taken out various insurance policies on each other's lives.  Defendant would have been paid proceeds from at least one of the insurance policies.

Prior to the murder of Sharon Randolph, Detroit Police Officer Shannon Remson, whom Sharon Randolph was having an affair with, testified that he observed black eyes and bruises on her.  On August 7, 1981 and on August 9, 1981, police officers answered assault and battery complaints at the home of defendant and Sharon Randolph.  Detroit Police Officers Alma Cooper and Scott Roberts observed bruises on Sharon Randolph, and Officer Roberts noticed a cut on her eye.  Defendant told Officer Roberts that Sharon Randolph assaulted him on several occasions, which is consistent with Harkins' testimony that Shannon told her that defendant wanted his wife dead because she was always abusing him.

Under an aiding and abetting theory sufficient evidence has clearly been introduced to support defendant's conviction for first-degree premeditated murder.  There is testimony, when viewed in a light most favorable to the prosecution, that defendant contacted and offered Shannon money to kill his wife, they planned how to kill her, and that Shannon did kill defendant's wife, Sharon Randolph.  Defendant, on appeal, does not appear to even challenge that there has been evidence to support the first-degree premeditated murder conviction, but rather appears to argue that the evidence was not credible.  But this Court should not interfere with the jury's role of determining the weight of evidence or the credibility of witnesses....  Questions of credibility and intent should be left to the trier of fact to resolve....  It is for the trier of fact rather than this Court to determine what inferences can be fairly drawn from the evidence and to determine the weight to be accorded to the inferences....  All conflicts in the evidence must be resolved in favor of the prosecution....  Upon a *de novo* review, when viewing the evidence in a light most favorable to the prosecution

19

and resolving all conflicts in favor of the prosecution, a rationale trier of fact
could find that the essential elements of first degree premeditated murder were
committed under an aiding and abetting theory....

*Randolph*, 2003 WL 22113938 at \*5-8 (citations omitted).

Having reviewed the record, this Court concludes that the Michigan Court of Appeals'
decision is consistent with federal law and constitutes a reasonable application of the law and
the facts in light of the evidence.  The testimony of David Hutsell, Sarah Norwood, and
Netherlee Harkins provided sufficient evidence to establish Petitioner's guilt of first-degree
murder as an aider and abettor in Sharon Randolph's death.  Petitioner's insufficient evidence
claim essentially challenges the credibility of the witnesses and the weight to be accorded the
trial testimony.  However, it is well-settled that "[a] federal habeas corpus court faced with a
record of historical facts that supports conflicting inferences must presume - even if it does not
affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of
the prosecution, and must defer to that resolution."  *Walker v. Engle*, 703 F.2d 959, 969-70 (6th
Cir. 1983).  It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts.
*See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).  Given the
evidence presented at trial, this Court finds that the Michigan Court of Appeals' determination
that a rational trier of fact could have found the elements of first-degree murder beyond a
reasonable doubt was reasonable.  Habeas relief is not warranted on this claim.

E.    Failure to Disclose Impeachment Evidence

Petitioner also asserts contends that he is entitled to habeas relief because the
prosecution failed to disclose impeachment evidence regarding inducements to material
witnesses, *i.e.*, reward money which may have been available to David Hutsell and Sarah

20

Norwood.  Respondent contends that this claim is frivolous.

It is well-settled that there is no general constitutional right to discovery in a criminal case.  *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988).  A prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  In other words, to find a *Brady* violation, not only must the evidence be suppressed, but the suppressed evidence must be material and favorable to the accused.  *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985).

Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432-36 (1995).  Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce."  *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993).  The duty to disclose favorable evidence includes the duty to disclose impeachment evidence.  *Bagley, supra*; *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

Thus, in order to establish a *Brady* claim, a petitioner must show that:  (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of the petitioner's guilt.  *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *see also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  The petitioner bears the burden of establishing a *Brady* violation.  *Carter*, 218 F.3d at 601.

Citing *Brady*, the Michigan Court of Appeals concluded that Petitioner had not established error requiring reversal because he had failed to show that the prosecution was in possession of the evidence, that the evidence was unavailable to the defense from another source, or that Petitioner was harmed by any non-disclosure given the extensive impeachment evidence presented against Hutsell and Norwood.  *See Randolph*, 2003 WL 22113938 at *9.

This Court concludes that the Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts.  Petitioner has not met his burden of establishing a *Brady* violation.  First, Petitioner has not shown that the reward information was in the sole possession of the prosecution and was unavailable from another source.  Any reward was announced to the public at the time of the murder, and defense counsel was aware of this possibility given that counsel questioned Sarah Norwood about a reward during pre-trial proceedings.  Second, even if the impeachment information was suppressed and favorable, Petitioner has not shown that it was sufficiently material. Exculpatory evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Bagley*, 473 U.S. at 676.  There is no such reasonable probability here.  Although Hutsell and Norwood provided valuable prosecution testimony, they were both subject to extensive cross-examination by defense counsel and were impeached with their possible personal and financial motives for implicating their uncle (and thus Petitioner) in the crime.  The jury was well aware of potential failings in their testimony, including their recollections of the events in question and their motives for testifying at trial.  Under such circumstances, the impeachment value of their possible expectation of a long ago offered reward was not substantial and would not likely have

22

affected the outcome at trial.  Habeas relief is not warranted on this claim.

      F.    <u>Ineffective Assistance of Trial Counsel</u>

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective in representing him for failing to interview defense witnesses, investigate and prepare a substantial defense, for failing to adequately consult with Petitioner and present his testimony, and for failing to object to the alleged prosecutorial misconduct and request curative instructions at trial.  Respondent contends that this claim lacks merit.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must  prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  466 U.S. at 687.  Second, the petitioner must establish that the deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

23

would have been different." *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

Citing *Strickland*, the Michigan Court of Appeals denied relief on these claims essentially finding that Petitioner had not rebutted the presumption that counsel's actions were sound trial strategy, that he had not demonstrated that counsel's conduct deprived him of a substantial defense, and that he had not shown that but for any error by counsel the result would have been different.  *See Randolph*, 2003 WL 22113938 at *9-10.  Having reviewed the record, this Court concludes that the Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.

### 1.    Failure to Investigate and Present a Substantial Defense

Petitioner first asserts that defense counsel was ineffective for failing to investigate defense witnesses and present a defense regarding an alleged extortion attempt upon Petitioner by Vernor Norwood, Sarah Norwood's husband.  Petitioner admits that counsel was aware of this information and states that Petitioner's son testified about the extortion attempt during a mock jury trial in which Petitioner was acquitted.  Petitioner states that the mock jury was skeptical of the extortion testimony because it was never reported to police, but notes that the jury acquitted Petitioner nonetheless.  Petitioner claims that counsel should have investigated additional witnesses who would have testified that Vernor Norwood visited Petitioner's office

near the time of his arrest.

Decisions as to what evidence to present and whether to call certain witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 Fed. Appx. 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). Petitioner has not rebutted this presumption. Petitioner acknowledges that trial counsel was aware of the alleged extortion attempt, but chose not to pursue the matter at trial. Counsel may have reasonably decided not to present the information for a variety of reasons, including the possibility that the testimony would be disbelieved, particularly given that the incident was not reported to police. Counsel may have also thought that the matter would call attention from more important issues in the case. Petitioner has not shown that counsel was deficient. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Furthermore, Petitioner has not established that he was prejudiced by counsel's decision. Defense counsel presented significant impeachment material against David Hutsell and Sarah Norwood yet the jury chose to believe their story and convict Petitioner after considering all of the evidence presented at trial. The extortion attempt information would have been cumulative impeachment material. Having reviewed the record, this Court cannot conclude that the Michigan Court of Appeals' decision was unreasonable. Habeas relief is not warranted on this claim.

2.     Failure to Consult and Preclusion from Testifying

Petitioner also asserts that defense counsel was ineffective for failing to sufficiently consult with him, thereby precluding him from testifying in his own defense.  It is well-established that a criminal defendant has a constitutional right to testify in his own behalf.  *See Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987); *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir. 1997).  "However, it has been held that a 'barebones assertion by a defendant, [even one] made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him.  It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary ... to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.'"  *McCoy v. Bock*, 2003 WL 22994984, *11 (E.D. Mich. Dec. 17, 2003) (Lawson, J.) (quoting *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991), and citing *Chang v. United States*, 250 F.3d 79, 84-85 (2nd Cir. 2001); *Sciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987)).

In this case, Petitioner makes only a bald assertion that trial counsel failed to consult with him sufficiently and that he was precluded from testifying at trial.  Petitioner does not allege that he was misled or that he believed that he was not allowed to testify at trial. Petitioner, himself an attorney, clearly knew of his rights.  Defense counsel's role is to advise the defendant whether to take the stand, but it is for the defendant, ultimately, to decide.  *See United States v. Webber*, 208 F.3d 545, 550-51 (6th Cir. 2000) (citing cases).  A defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand.  Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.  *Id*. at 551.  Petitioner did not

26

testify nor notify the trial court of his desire to testify at the time of trial. Accordingly, waiver of the right to testify is presumed. Petitioner has not rebutted this presumption.

In any event, Petitioner has failed to establish that he was prejudiced by defense counsel's conduct. He has not indicated what counsel would have discovered or accomplished upon further consultation with him, what his testimony would have been, and/or how it would have affected the outcome at trial. He has thus not shown that he was prejudiced by counsel's alleged failure to consult with him or call him to testify at trial. *See Dell v. Straub*, 194 F. Supp. 2d 629, 653 (E.D. Mich. 2002) (Friedman, J.); *accord Foster v. Delo*, 39 F.3d 873, 877 (8th Cir. 1994). Habeas relief is not warranted on this claim.

### 3.     Failure to Object to Alleged Prosecutorial Misconduct

Petitioner also asserts that defense counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct. Counsel cannot be deemed deficient for failing to make a futile objection or motion. *See McQueen*, 99 F.3d at 1328. Given this Court's determination that the prosecutorial misconduct claims lack merit, Petitioner cannot establish that defense counsel was ineffective under the standard set forth in *Strickland, supra*. Habeas relief is therefore not warranted on this claim.

### G.     Newly-Discovered Evidence

Lastly, Petitioner asserts that he is entitled to habeas relief based upon newly-discovered evidence regarding material inducements to witnesses and other impeaching or exculpatory evidence. The evidence at issue primarily concerns David Hutsell's deposition testimony regarding his police interviews during the murder investigation. The deposition was conducted after Petitioner's trial as part of a wrongful death lawsuit. Respondent contends that this claim

27

is not cognizable upon federal habeas review.

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*. A claim that a habeas petitioner is entitled to relief based upon the failure of a state trial judge to grant him a new trial on the basis of newly discovered evidence is not cognizable in a habeas proceeding. *See Monroe v. Smith*, 197 F. Supp. 2d 753, 763 (E.D. Mich. 2001). Thus, Petitioner's claim that he has newly discovered evidence does not state a claim upon which habeas relief can be granted. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 606 (E.D. Mich. 2001).

Federal courts which have suggested that habeas relief could conceivably be granted upon newly-discovered evidence have set an extraordinary showing of a petitioner's innocence before relief could be granted. *See Dell v. Straub*, 194 F. Supp. 2d 629, 657 (E.D. Mich. 2002); *Johnson*, 159 F. Supp. 2d at 606 (collecting cases). Even on direct appeal, motions for a new trial based upon newly discovered evidence are "are disfavored and should be granted with caution." *Monroe*, 197 F. Supp. 2d at 763 (quoting *United States v. Turns*, 198 F.3d 584, 586 (6th Cir. 2000)). When a defendant in federal court makes a motion for a new trial based upon newly discovered evidence, a defendant must show:

> 1. the evidence was discovered after trial;
> 2. the evidence could not have been discovered earlier with due diligence;
> 3. the evidence is material and not merely cumulative or impeaching; and
> 4. the evidence would likely produce an acquittal if the case were retried.

*Turns*, 198 F.3d at 586-87. Petitioner has not met this standard. The evidence of the police

28

interviews could have been discovered earlier with due diligence, and such evidence was

impeachment evidence.  Habeas relief is not warranted on this claim.

**IV.     Conclusion**

Based upon the foregoing analysis, the Court concludes Petitioner is not entitled to

federal habeas relief on the claims presented in his petition.  Accordingly, the Court **DENIES**

**WITH PREJUDICE** the petition for writ of habeas corpus.


                         s/Nancy G. Edmunds                           
                         Nancy G. Edmunds
                         United States District Judge

Dated:  June 12, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on
June 12, 2006, by electronic and/or ordinary mail.

                         s/Carol A. Hemeyer                           
                         Case Manager